UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN L. ALLEN,

        Plaintiff,

v.                                                  Case No. 05-C-975

MATTHEW FRANK, et al.,

        Defendants.

**DECISION AND ORDER**

Plaintiff John Allen, a Wisconsin prisoner, filed this pro se action against several defendants, claiming he received inadequate medical care in violation of the Eighth Amendment. Currently pending are the motions for summary judgment filed by defendants Kliewer, Kelcz, Shannahan, Kumapayi. For the reasons given below, the motions will be granted.

**I. Background**

John Allen, at all relevant times, was incarcerated at the Columbia Correctional Institution. On January 9, 2003, he was referred to Dr. Kliewer, a radiologist employed by the University of Wisconsin Medical School, for testicular pain and abnormalities in his scrotum. An ultrasound of Allen's scrotum was performed, and the results were reviewed initially by Dr. Shannahan, a medical resident. Shannahan noted that the right testicle was larger than the left and the right testicle had an increased and asymmetrical blood flow. (Kliewer Aff., ¶ 3.) He and his supervisor, Dr. Kliewer, agreed that this could be evidence of inflammation or residual infection related to previous

treatment. They also found evidence of what may have been a vasectomy clip or "dystrophic calcification" in the right testicle.

Plaintiff was again referred on February 24, 2004 and another ultrasound was taken. This time, Drs. Schumacher and Kelcz reviewed the image and found a mass on, or next to, the left testicle, which they suggested was benign given its "extra-testicular nature." (Kelcz Aff., ¶ 3.) Some months later, Allen wrote to Kelcz about his increasing testicular pain. Kelcz responded, explaining that most masses outside the testicle are benign. (Kelcz Aff., ¶ 6; Pltf. Br. at 9.) He also explained that Allen should consult with his prison doctor to determine whether further analysis by a urologist would be warranted. He further explained that not all causes of pain could be detected by imaging.

On September 21, 2004, plaintiff was seen for persistent testicular pain by Olubunmi Kumapayi, a nurse practitioner in urology with the University of Wisconsin Medical Foundation, a tax-exempt organization that has an agreement with the Department of Corrections to treat certain prisoner medical needs. (Schrum Decl. ¶ 6.) She performed a physical exam and took an ultrasound, which revealed only that a benign cyst had shrunk since the last ultrasound. The results did not, in other words, provide an answer for why the plaintiff was experiencing pain. During the exam, plaintiff stated that he had previously experienced relief while on antibiotics (he denies this), and Nurse Kumapayi gave him a six-week prescription for "Cipro." She previously had successfully given antibiotics to other patients with symptoms similar to the plaintiff's. In a letter to Dr. Andrew Lee at Columbia Correctional, Kumapayi summarized the exam and plaintiff's condition: "It appears that Mr. Allen has scrotal discomfort of unknown etiology which is consistent with chronic pelvic pain syndrome. Given that he has had some relief with short term antibiotics,

2

I recommend trial of a long term fluoroquinolone antibiotic. . . . Long-term antibiotics have been known to help in some situations like this. . . . Mr. Allen can follow up in the Urology Clinic on an as-needed basis." (Kumapayi Decl., Ex. A.)

**II. Analysis**

Allen claims each of the defendants violated the Eighth Amendment by virtue of their deliberate indifference to his serious medical needs. A claim that a state actor has violated the Eighth Amendment must demonstrate two elements: (1) an objectively serious medical condition, and (2) deliberate indifference by the prison officials to that condition. *Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir. 2006). For purposes of the present motions, I may assume that Allen has a serious medical condition and proceed to address whether there is any evidence of deliberate indifference. As the Seventh Circuit has summarized the analysis:

> Deliberate indifference is a subjective standard. To demonstrate deliberate indifference, Johnson must show that the defendants "acted with a sufficiently culpable state of mind." Deliberate indifference "is more than negligence and approaches intentional wrongdoing." We have further explained that deliberate indifference is "essentially a criminal recklessness standard, that is, ignoring a known risk." Even gross negligence is "below the standard needed to impose constitutional liability." The standard requires that an officer have "subjective awareness" of the serious medical need and then act with indifference to that need.

*Id.* at 585 (citations omitted).

It is clear, then, that the deliberate indifference standard is a tough one. These requirements, of course, are not invented by judges but are grounded in the text of the Eighth Amendment itself: it cannot be "punishment" without at least some purpose to punish, just as it cannot be "cruel" if the harm is inflicted unintentionally or merely negligently. Both words connote something more.

3

At the outset, I note that the summary judgment motions have been filed before substantial discovery has been undertaken. In some instances, this would prove problematic if factual disputes existed that were material to the outcome. Here, however, the factual issues that do exist are not material to the deliberate indifference analysis. For instance, the plaintiff claims it is impossible for him to know whether defendant Shannahan is liable without knowing the scope of his job duties. (Docket # 64, ¶ 13.) The same is true, he believes, for other defendants. (Docket # 42, ¶¶ 3, 11.) In plaintiff's view, apparently, he needs to know the specific job duties of the defendant physicians in order to assess their performance. But that is not the case. It is enough to know that the defendant radiologists were physicians who examined images of the plaintiff's testicles and that defendant Kumapayi was a nurse practitioner in urology. That establishes what their *constitutional* duties to the plaintiff were, and sets the benchmark for whether they knew of a risk to the plaintiff's health and nevertheless disregarded it. In other words, it does not matter, constitutionally speaking, what particular role each of the defendants played within the University of Wisconsin hospital structure.

Beyond that, however, the plaintiff does not raise any material factual issues. That is, he does not claim that any of the doctors' affidavits are wrong or that they are lying; instead, he points to their conduct and claims that, as a matter of law, it constitutes deliberate indifference. Thus, because there are no genuine factual disputes, I may proceed to address the plaintiff's claims against each of the defendants. First, the plaintiff claims that defendants Shannahan, Kliewer and Kelcz (the radiologists) knew about the seriousness of the plaintiff's pain and should be held to a higher standard of care because they are specialists rather than general practitioners. The plaintiff does not claim that they missed something or erred in reading his images; indeed, he does not explain what

4

he thinks they should have done differently except to do more tests. He also notes that radiology images do not always reveal every cause of pain (as Dr. Kelcz stated in his letter to the plaintiff), and apparently on that basis he believes the physicians should have conducted more testing on him. He also seems to argue that it was incumbent on the radiologists to tell his primary physician that the images were not conclusive and to ensure that the plaintiff was seen by other specialists.

With regard to defendant Kumapayi, the plaintiff believes that her prescription of Cipro *ipso facto* establishes that he suffered a serious medical condition (a point I have assumed to be true). He also claims that she failed to undertake any tests for gonorrhea or chlamydia, and that he told her that he had taken Cipro in the past with no improvement. The thrust of his complaint seems to be that the cause of his pain is still unknown because Kumapayi (like the radiologists) failed to perform adequate testing on him.

In sum, the plaintiff seems fed up with what he views as inadequate medical treatment. In truth, of course, the plaintiff has been seen repeatedly by specialists at university hospitals–medical care exceeding that of most individuals in this country. But even accepting the facts in the light most favorable to the plaintiff, the evidence does not establish a constitutional violation with respect to any *particular* defendant. The inherent–and insurmountable– difficulty in the plaintiff's case is that he wants to make out a deliberate indifference claim against individual specialists who saw the plaintiff on extremely isolated occasions. They performed some tests but not others. The radiologists looked at images, and Kumapayi examined the plaintiff and took a try-and-see approach with Cipro. These acts cannot constitute deliberate indifference because the cause of the plaintiff's pain was not clear (and remains so, apparently). Because the plaintiff's case *vis-a-vis* these defendants was in the *investigative* stage, rather than the treatment stage, it is nearly impossible to

5

demonstrate the culpable state of mind required to show deliberate indifference. The defendants were trying to figure out what was wrong with the plaintiff rather than ignoring anything they *knew* to be wrong.

It would be one thing if the plaintiff presented with an obvious medical problem such as a broken bone and the physician gave him antibiotics and nothing else. But there is no evidence that such was the case here: the plaintiff only speculates that other tests should have been done. When the plaintiff *is* receiving medical care from physicians and nurse practitioners, as here, it is not enough to speculate or to simply disagree with a particular course of conduct. There must be evidence that a defendant *knew* there was a substantial risk of harm if the right treatment was not followed. Such a claim is impossible under these facts because medical providers were apparently at a loss (despite numerous tests and ultrasounds) for the cause of Allen's pain.

> As the Seventh Circuit has noted,
>
> At the very least, a prison official must act or fail to act despite his knowledge of a substantial risk of serious harm. Thus, in *Choi,* we noted that where there was no evidence that the inmate's symptoms were consistent only with a single diagnosis, and where there is no evidence that the doctor was ignoring the inmate's medical needs, it is not enough to show that a reasonable doctor would have made the correct diagnosis and treatment. 82 F.3d at 179. "If the symptoms plainly called for a particular medical treatment-the leg is broken, so it must be set; the person is not breathing so CPR must be administered-a doctor's deliberate decision not to furnish the treatment might be actionable under § 1983." *Id.* A doctor might be careless in not appreciating the need to investigate several possible explanations for a particular prisoner's symptoms, and this carelessness may constitute malpractice. But malpractice alone is not enough to meet the constitutional standard. *Id.*

*Walker v. Peters,* 233 F.3d 494, 499 (7th Cir. 2000) (citation omitted). By the plaintiff's own admission, this is not a case where the symptoms "plainly called for a particular medical treatment" that the doctors ignored. It is, at worst, a case in which the defendants were "careless in not

6

appreciating the need to investigate several possible explanations for a particular prisoner's symptoms," which only would constitute negligence, not deliberate indifference.[1] In sum, the case amounts to Allen's disagreements with his medical providers' course of action, and "mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella,* 95 F.3d 586, 591 (7th Cir. 1996) (citations omitted). Accordingly, the motions for summary judgment (docket #s 27, 48, and 58) are granted. Defendant Kumapayi's motion for a protective order (docket # 115) is denied as moot.

**SO ORDERED**.

Dated this   3rd   day of July, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[1] Plaintiff comes closest with respect to defendant Kumapayi. He asserts that he told her he had no success with antibiotics in the past, so he questions why she would place him on Cipro under a six-week trial. But, as noted, this was not the sort of case where the doctor failed to set a broken bone and an obvious inference of deliberate indifference could be made. Instead, it is a case in which a specialist suggested a particular course of treatment. Plaintiff rests only on his own speculation about what the proper course of treatment would have been.