UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN ALLEN,

        Plaintiff,

v.                                        Case No. 05-C-975

MATTHEW FRANK, et al.,

        Defendants.

## DECISION AND ORDER

In this § 1983 case, summary judgment has previously been granted to several of the defendants. What remains is a classic dispute between the plaintiff and prison staff about the proper course of the plaintiff's medical treatment. Plaintiff states that his pain has gone untreated, whereas the defendants argue that plaintiff has received nothing but top-notch medical care from numerous primary care physicians and specialists. The problem for the plaintiff is that he backs up his claim only with subjective complaints of pain and his own personal opinions about the medical treatment he should have received. In the face of substantial evidence provided by trained physicians – who still have not located a physical source of the plaintiff's pain – a plaintiff's own say-so on the issue of deliberate indifference is not enough to defeat summary judgment. Accordingly, the defendants' motion will be granted.

As noted in previous decisions, this case involves the plaintiff's claims of persistent testicular pain. The record shows that the plaintiff was seen numerous times for his complaints and referred to several specialists in urology, as well as a nurse practitioner. Claims against these

defendants have been dismissed in previous orders. At present all that remains is the plaintiff's claims against his primary prison physician, Dr. Gary Bridgwater, as well as claims against various prison staff members.

"A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman,* 462 F.3d 757, 760 (7th Cir. 2006). In this case the plaintiff likely fails on both accounts: he cannot demonstrate a sufficiently serious medical condition, nor can he show that any of the defendants possessed the requisite mental state. Although it is doubtful that the plaintiff can demonstrate that he suffered from a serious medical condition, I will focus on the question of the defendants' deliberate indifference.[1]

The phrase "deliberate indifference" calls to mind a set of facts in which an inmate's serious medical condition is simply ignored or brushed off by medical staff or prison guards. That is perhaps the more typical case. But such a claim would not succeed here, of course, since the plaintiff was seen repeatedly by at least six doctors and other staff for his complaints about testicular pain. Indeed, as noted in an earlier order, the record shows that he has received treatment exceeding that afforded to most citizens in this country. *Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003) ("He also says that he's been seen by prison doctors at least 10 times in 3 months, so he is not alleging that he was denied medical care.") Thus, the plaintiff's claim is not that his pain was

---

[1]As discussed below, the plaintiff's condition is something of a mystery. Thus, it is difficult to conclude that he suffers from an objectively serious medical condition. On the other hand, complaints of constant pain might create a fact question unresolvable at this stage.

2

ignored, but that the attention he did receive failed to account for substantial risks to his health. Because such a claim calls into question the medical judgment of the professionals who treated the plaintiff, it is naturally a much more difficult task.

When the claim is that medical professionals are so wrong that their treatment amounts to deliberate indifference (a level of deficiency well beyond mere negligence), a plaintiff, practically speaking, may pursue one of two courses. First, he may provide evidence, presumably through medical experts, to show that the course of treatment offered to him was constitutionally unacceptable. He could attempt to show, for example, that his doctors' failures strayed so far outside the bounds of common medical practice that a jury could find the requisite reckless mental state. The plaintiff has not followed this approach. An alternative approach is to proceed under the premise that the plaintiff's medical condition was so severe or obvious that medical evidence is not required. "[A] trier of fact can conclude that the professional knew of the need from evidence that the serious medical need was obvious." *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006) (quoting *Collignon v. Milwaukee County,* 163 F.3d 982, 989 (7th Cir. 1998)). For example, "[i]f the symptoms plainly called for a particular medical treatment – the leg is broken, so it must be set; the person is not breathing so CPR must be administered – a doctor's deliberate decision not to furnish the treatment might be actionable under § 1983." *Steele v. Choi,* 82 F.3d 175, 178 (7th Cir. 1996).

The plaintiff appears to be following this latter path, asserting that his doctors' errors were so obvious that no other evidence is required. His problem is that proper treatment for his condition is plainly not obvious, and his claim that it is finds support only on his own beliefs. He asserts, for example, that several of the doctors he saw prescribed him Cipro, which did not work, and by the

3

fourth Cipro prescription the plaintiff wonders, "what can they possibly believe it will do?" (Pltf. Br. at 4.) The defendants knew the treatment did not work, he asserts, but nevertheless kept him on it, which exposed Allen to the risk that a harmful (still undiagnosed) disease was festering inside him. This fear appears based on a vague statement by a doctor that "anything that continues to grow can be a rare form of cancer," as well as other medical sources the plaintiff has consulted. (*Id.*) Finally, he takes issue with the opinion of Dr. Bridgwater, who has seen the plaintiff at least twelve times for complaints of pain. Dr. Bridgwater has concluded that the plaintiff is suffering from somatization, meaning that the plaintiff's physical complaints are driven by psychological forces. Plaintiff believes this is wrong because a psychologist who treated him does not believe he is "crazy."

It is likely from the plaintiff's brief and other filings (including photocopies of a medical textbook) that he believes he is dying from testicular cancer and that numerous medical providers are either lying to him or bungling his treatment. Throughout the course of his treatment, he demanded urology consults and continued complaining of testicular pain and discomfort. Nevertheless, all of the numerous tests were negative, which has led his primary prison physician to the opinion that the complaints of pain have a psychological component to them. (Bridgwater Aff., ¶ 37.)

Unfortunately for the plaintiff, the law makes clear that he cannot defeat summary judgment based merely on his own subjective view of the proper course of treatment. "[N]either medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference." *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). That is, unless the proper course of treatment for his medical problem was obvious (e.g., administering CPR to a person who

4

stopped breathing), or unless the record evidences a course of conduct actually suggestive of reckless indifference to the plaintiff's symptoms, a plaintiff must have more than his own say-so to call his treatment into question. "Where there was no evidence that the inmate's symptoms were consistent only with a single diagnosis, and where there is no evidence that the doctor was ignoring the inmate's medical needs, it is not enough to show that a reasonable doctor would have made the correct diagnosis and treatment." *Walker v. Peters,* 233 F.3d 494, 499 (7th Cir. 2000). This is especially true, no doubt, when there is no evidence in the record, even now, of what the "correct diagnosis" is. With no evidence that the plaintiff actually suffers from some severe disease, how could a court conclude that his doctors were negligent, much less deliberately indifferent? The record reveals that the plaintiff's condition was not the sort of ailment whose course of treatment was clear-cut – in fact, a 2006 letter from a treating urologist indicates that multiple courses of antibiotics and multiple ultrasounds "do not show any distinctive etiology for his symptomatology." (Allen Aff., Docket No. 113, Ex. 11.) This would appear not just to undercut the plaintiff's own claims, but to bolster the opinion of Dr. Bridgwater. In any event, when the risk to the prisoner's health has not yet even materialized, it is impossible under such circumstances to conclude that any defendant was deliberately indifferent to that risk.

In fact, the plaintiff's argument echos the argument made by the unsuccessful respondent in *Estelle v. Gamble.* There, the Supreme Court summarized the argument as follows:

> Gamble's claims against Dr. Gray, both in his capacity as treating physician and as medical director of the Corrections Department, are not cognizable under § 1983. Gamble was seen by medical personnel on 17 occasions spanning a 3-month period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Heaton three times; by an unidentified doctor and inmate nurse on the day of the injury; and by medical assistant Blunt six times. They treated his back injury, high blood pressure, and heart problems. . . his complaint is "based solely on the lack of diagnosis and inadequate

5

> treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. . . . *But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.* At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

*Estelle v. Gamble,* 429 U.S. 97, 107 (1976) (citations omitted) (italics added).

Here, there was nothing obvious about the plaintiff's ailment and there is nothing in the record suggesting any of the defendants were actually reckless (or worse) in their attempts to treat him. The plaintiff's argument is based solely in his own disagreements about the course of treatment he received, but these were medical judgments which do not manifest cruel and unusual punishment. *Id.*

*Greeno v. Daley* is instructive by comparison. 414 F.3d 645. There, the Seventh Circuit found that the question of deliberate indifference should reach a jury in light of the fact that the prison doctors affirmatively banned further treatment for the plaintiff, ignored his complaints and repeated vomiting, and refused referral to specialists. *Id.* at 655-56. That is almost the opposite of what occurred here, where the record reveals that Allen received repeated and thorough attention for his complaints and was approved for visits to university specialists. The only similarity to *Greeno* is that the doctors continued with a course of treatment known to be ineffective, which is what Allen asserts happened in this case with his Cipro prescription. The glaring difference, however, is that to-date Allen has not identified any other course of treatment that would have been successful – in fact, it still appears that Allen's pain has not resulted in a diagnosis despite repeated tests and examinations. Thus, his doctors' repeated attempts to treat him with Cipro do not

6

evidence anything other than their inability to solve his testicular pain problem and an ongoing belief that it could be caused by infection. Given the repeated tests and ultrasounds, treatment with Cipro does not evidence a wilful attempt to ignore the plaintiff's symptoms.

Finally, even if a plaintiff's own opinions could defeat summary judgment in the face of substantial medical evidence, this plaintiff's attempts to contest Dr. Bridgwater's opinions are unpersuasive. He first questions why Bridgwater would have prescribed treatment and even given him a scrotum support device if he actually believed that the plaintiff's illness was psychological. Yet Bridgwater has only reached his somatization diagnosis *after* the numerous tests and other treatments failed to reveal a physical cause for the plaintiff's pain. Thus, it is not inconsistent for a physician to treat a patient for physical symptoms and then to later conclude, after multiple tests, that there is not a physical basis for the patient's complaints. The plaintiff also argues that his psychologist does not believe he is "crazy," and thus Dr. Bridgwater's somatization diagnosis must be wrong. There are at least two problems with this argument. First, even if two medical professionals disagree, it does not follow that one of them must be so wrong that he could be found deliberately indifferent. *See Estate of Cole v. Fromm,* 94 F.3d 254, 261 (7th Cir. 1996) ("Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference.") Second, Dr. Bridgwater never stated that the plaintiff was "crazy;" he merely concluded that the plaintiff's complaints could have a psychological, rather than physical, source. Thus, there is no basis to conclude that Bridgwater's opinion conflicts with the psychologist's.

Because I have concluded the medical providers were not deliberately indifferent, it follows that the non-medical staff are also not liable. When an inmate complains of pain and his doctors

7

cannot pinpoint a cause, it will be impossible to show that any non-medical staff had the requisite mental state for deliberate indifference. That is because deliberate indifference requires knowledge of a substantial risk to the prisoner's health and safety, *Collins,* 462 F.3d at 760, and when the treating physicians are stumped by the plaintiff's condition, his complaints as to his treatment by non-medical staff do not constitute deliberate indifference. Had non-medical staff interfered with a prescribed course of treatment, that would be one thing. Here, however, absent a clear diagnosis or course of treatment, there is no evidence that any non-medical staff possessed the requisite mental state.

Accordingly, the defendants' motion for summary judgment is GRANTED and the case is DISMISSED.

SO ORDERED this 20th day of December, 2006.

                                                s/ William C. Griesbach
                                                William C. Griesbach
                                                United States District Judge